[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-appellant Bryan Moore appeals from his conviction and sentence for violating the terms of a domestic violence protection order. Moore contends that the trial court erred by overruling his objection to testimony from a psychiatric social worker employed by the hospital to which he had been admitted, upon the ground that the testimony concerned a privileged communication. We conclude that the only privilege applicable to a communication to a psychiatric social worker is the privilege established by R.C. 2317.02(G)(1), and that the communication to which the testimony related was a communication indicating a clear and present danger to Moore's wife. Because communications indicating a clear and present danger to the client or other persons are excluded from this statutory privilege established for social workers, we conclude that the trial court correctly overruled Moore's objection. Accordingly, the judgment of the trial court is Affirmed.
 I
On June 2, 1998 a Domestic Violence Ex Parte Civil Protection Order was entered in the Montgomery County Common Pleas Court, Division of Domestic Relations, pursuant to which Moore was ordered not to abuse his wife, Terri Lynn Moore, or any other family member, by harming, attempting to harm, threatening, molesting, following, stalking, bothering, harassing, annoying, contacting, or forcing sexual relations upon them. (Emphasis added.) Thirteen days later, Moore was admitted to the psychiatric ward of Good Samaritan Hospital, upon a diagnosis of major depression. At some time after his admission, Moore made statements concerning his wife that alarmed his treating psychiatrist.
The day after Moore's admission to the hospital, his treating psychiatrist, a medical student, and a psychiatric social worker, Beverly Brown, met with him, and Moore made a statement, in their presence, which may have been elicited from Moore in reference to the other statement he had made to his treating psychiatrist, that if he would kill himself, he would also kill his wife. Moore made this statement repeatedly. Brown relayed this statement to Moore's wife. Moore was released from the hospital two days later.
Moore was charged with Aggravated Menacing, and Violation of a Protection Order. During a bench trial, Moore objected to testimony by Brown concerning the statements Moore made in her presence, upon the ground that those statements were privileged. Following a voir dire examination, and the arguments of the parties, the trial court overruled Moore's objection, and allowed the testimony.
At the conclusion of the State's case in chief, the trial court granted Moore's motion for a judgment of acquittal, pursuant to Crim.R. 29, upon the Aggravated Menacing charge, but denied the motion with respect to the charge of Violating a Protection Order. Moore then rested, without presenting any evidence. The trial court found Moore guilty of the charge of Violating the Protection Order, and sentenced him accordingly. From his conviction and sentence, Moore appeals.
 II
Moore's sole Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF A SOCIAL WORKER WHO WAS EMPLOYED BY THE HOSPITAL OVER THE ASSERTION OF A PRIVILEGE.
Moore contends that the trial court erred by overruling his objection to Brown's testimony. He contends that the statements he made were privileged under the physician-patient privilege. Moore appears to be predicating this argument upon the fact that Brown was employed by the hospital, her receipt of the communication was relevant to Moore's diagnosis and treatment, and, therefore, that communication was within the scope of the physician-patient privilege. Moore cites Johnston v. Miami ValleyHospital (1989), 61 Ohio App.3d 81, in support of this proposition.
On its face, R.C. 2317.02(B)(1), which establishes the physician-patient privilege, applies only to communications to doctors of medicine, doctors of osteopathic medicine, doctors of podiatry, and dentists. R.C. 2317.02(B)(5). Thus, even though a nurse is a hospital employee, a communication made to a nurse in the performance of her duties is not privileged.Johnston, supra, at 84, citing Weis v. Weis (1947), 147 Ohio St. 416. In Johnston, however, we construed R.C. 2317.02(B)(3), now (4), as defining a "communication" broadly enough to encompass nurses' notes upon which a physician relies for diagnosis or treatment. Nevertheless, we did not alter our construction of the holding in Weis v. Weis, supra, that communications made directly by a patient to a nurse, in the performance of her duties, are not privileged. Similarly, the communication in the case before us by Moore to Brown was not privileged pursuant to R.C. 2317.02(B)(1), because the General Assembly has not seen fit to encompass within the scope of the physician-patient privilege, communications with psychiatric social workers.
The State argues that Moore's statement was not necessary for diagnosis and treatment, so that it is not encompassed within the physician-patient privilege, regardless of Brown's presence or status. However, Brown, as the State's own witness, belied this claim when she made the following response to the trial court's question:
 THE COURT: Okay. For the court's clarification and I'm not asking you to divulge the statement at issue here but the statement at issue here, was this the type of statement that you believe in your professional capacity necessary to treat this patient?
A. To treat him?
THE COURT: To treat him.
A. Yes.
Moore points out that a reasonable construction of the evidence suggests that the treating psychiatrist brought Brown into the room with Moore for the purpose of eliciting a threatening remark that Brown, who would not be within the scope of the physician-patient privilege, could then divulge to Moore's wife. Moore's treating psychiatrist was dealing with a troublesome situation. The psychiatrist's motives in including Brown in the meeting are, however, of no significance in determining the scope or existence of the privilege. For example, if the psychiatrist had brought in a plainclothes police officer, or an assistant prosecutor, to hear the threat, it could hardly be argued that the communication would still have been privileged.
Perhaps the better practice would have been for Moore's treating psychiatrist to have made it clear to him that his statements made in Brown's presence might not be privileged. We appreciate that the psychiatrist was operating in a difficult and delicate area, with an understandable concern for Ms. Moore's safety.
In any event, there is nothing in this record to suggest that Brown's professional identity was misrepresented to Moore in any way. While it is understandable that Moore may have believed the statements he made in her presence were subject to the physician-patient privilege, that belief was not correct.
Although Moore does not rely upon it, a privilege is established by R.C. 2317.02(G)(1) for communications to licensed social workers. However, a communication indicating a clear and present danger to the client or to another person is excluded therefrom.
Moore's sole Assignment of Error is overruled.
 III
Moore's sole Assignment of Error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and WOLFF, JJ., concur.